IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| BARBARA BLEVINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 4:17-cv-0811-LSC |
| ) | |
| NANCY BERRYHILL, ) | |
| Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.  Introduction**

The plaintiff, Barbara Blevins, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Ms. Blevins timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Blevins was thirty-nine years old at the time of her application and forty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 33, 135.) She has a high school education and some college, and past work experience as a substitute teacher. (Tr. at 151, 166-68.) Ms. Blevins claims that she

1

became disabled on May 25, 2012,[1] due to adjustment disorder, depression, obesity, primary fibromyalgia syndrome (fibromyalgia), hypothyroidism, essential hypertension, and osteoarthritis. (Tr. at 22.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational

---

[1] An individual cannot receive SSI for any period prior to the month in which she filed her application. *See* 20 C.F.R. §§ 416.330, 416.335. Thus, the relevant period for deciding Plaintiff's case is the month in which she filed her SSI application, February 2014, through the date of the ALJ's decision, and not from her alleged onset date to the date of the ALJ's decision. *See* 20 C.F.R. §§ 416.330, 416.335.

2

requirements set forth in 20 C.F.R. §§ 404.1509 and 416. 909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment, or combination of impairments, does not meet a medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment

or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id*.

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.; see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first determined that Ms. Blevins has not engaged in SGA since February 5, 2014, the application date. (Tr. at 22.) According to the ALJ, Plaintiff's adjustment disorder, depression, obesity, fibromyalgia, hypothyroidism, essential hypertension, and osteoarthritis are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23.) The ALJ did not find Ms. Blevins's allegations to be totally credible, and he determined that she has the RFC to perform sedentary work as defined in 20 § C.F.R. § 416.967(a) with additional limitations. (Tr. at 25). Plaintiff could not climb

ladders, ropes, or scaffolds, could not work at unprotected heights or on uneven terrain, could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, could understand, remember and carry out simple instructions for two-hour periods and with normal breaks, and sustain those activities over the course of an eight-hour workday, could tolerate occasional decision-making and infrequent changes in the work setting, and could tolerate occasional interaction with the public, co-workers, and supervisors. (*Id.*)

According to the ALJ, Plaintiff has no past relevant work (because her past work as a substitute teacher was not performed at SGA level), she is a "young individual age 18-44," she has "at least a high school education," and she is able to communicate in English, as those terms are defined by the regulations. (*Id.*) The ALJ determined that transferability of job skills is not an issue because Plaintiff does not have past relevant work. (*Id.*) Because Plaintiff cannot perform the full range of sedentary work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocational Rule 201.27 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as table worker, dowel inspector, and packager. (Tr. at 32.) The ALJ concluded his findings by stating that Plaintiff has not been under a disability,

as defined in the Social Security Act, since February 5, 2014, the date the SSI application was filed. (Tr. at 32.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*,

793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Plaintiff's brief does not include a "Statement of the Issues" or a heading in her "Argument" section that clearly defines the issues that she is raising in this appeal. Nonetheless, it appears that Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence because the combined effects of her obesity, fibromyalgia, and edema of the hands and feet make her disabled.

A Plaintiff's RFC is the most she can do despite her limitations. *See* 20 C.F.R. § 416.945(a). The ALJ had the responsibility of assessing Plaintiff's RFC

based on all the relevant evidence, not just a doctor's opinion. *See* 20 C.F.R. §§ 416.945(a)(3), 416.946(c); Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 (July 2, 1996); *see also* 20 C.F.R. § 416.927(d)(2) (opinions from medical sources on your RFC are considered but the final responsibility is reserved to the Commissioner).

The plaintiff is considered morbidly obese, weighing 480 pounds with a body mass index of 75.2. (Tr. at 313.) However, the ALJ acknowledged that her obesity diagnosis qualifies as a severe impairment. (Tr. at 22.) While obesity is understood to cause limitation of function, it is the duty of the ALJ to assess the effect that Plaintiff's obesity has on her ability to perform routine movement and necessary physical activity within the work environment. *See* SSR 02-1P.

Here, the ALJ took Plaintiff's obesity into account but relied on the records of medical professionals that confirmed her ability to perform movements necessary for sedentary work. As the ALJ explained, from a "physical perspective, the claimant's hypertension, obesity, primary fibromyalgia syndrome, hypothyroidism and osteoarthritis are also well documented within the evidentiary record. However, despite the presence of these physical impairments, the claimant's multiple physical examinations throughout the record have all been essentially normal." (Tr. at 30).

Substantial evidence supports the ALJ's RFC assessment here. As the ALJ noted, in October 2013,[2] Plaintiff went to Dekalb Regional Medical Center due to a cough and shortness of breath, but an X-ray of her chest was normal, and she had no other complaints during the visit. (Tr. at 26, 244, 249). In January 2014, she had a largely normal physical examination and a neurological examination with normal findings, including that she was ambulatory, had lungs clear to auscultation, a regular heart rhythm and rate, and extremities with no joint inflammation. (Tr. at 26, 274). Also in January 2014, Plaintiff went to the emergency room complaining of shortness of breath with light activity, but her physical examination was normal other than a body mass index of 68.91, and she was only diagnosed with bronchitis. (Tr. at 26, 246-47). Indeed, Plaintiff had a normal respiratory, musculoskeletal/extremity, and neurological exam. (Tr. at 246).

Shortly after Plaintiff filed her SSI application in February 2014, Plaintiff had a normal physical examination with her treating physician, Dr. Daniel Mince. (Tr. at 270-75). Plaintiff had lungs clear to auscultation, a regular heart rate and rhythm, and extremities with no acute synovitis, and she was ambulatory. (Tr. at 273). Three months later, in May 2014, Dr. Mince found Plaintiff had multiple trigger points in her spine, and he increased her Cymbalta prescription. (Tr. at 299-300).

---

[2] The ALJ noted that Plaintiff alleged disability beginning May 25, 2012, but did not file her application for SSI until February 5, 2014, almost two years later. (Tr. at 25). However, the ALJ considered the evidence back to the alleged onset date. (Tr. at 26).

Otherwise, Plaintiff had a normal physical examination, including that her lungs were clear to auscultation and she was ambulatory. (Tr. at 299). When Plaintiff saw Dr. Mince in June 2014, she only received treatment for sinusitis and did not report any other significant symptoms. (Tr. at 296-98). In August 2014, Plaintiff presented to Dr. Mince for a routine follow-up during which she only complained of "generalized pain" and poor sleep, and her physical examination was unremarkable other than the notation of obesity. (Tr. at 318-21). In September 2014, Plaintiff saw Dr. Mince for complaints including foot pain, and he referred her to an orthopedist, but the record does not show Plaintiff saw an orthopedist. (Tr. at 313-17). Records from November 2014 did not reflect complaints of foot pain. (Tr. at 27, 310-13.) Between November 2014 and March 2015, Plaintiff did not receive medical treatment (Tr. at 27).

The record also contains the opinion of Dr. Younus Ismail, who performed a physical consultative examination of Ms. Blevins in April 2014 at the request of the Administration. (Tr. at 286-88.) Dr. Ismail noted that Plaintiff had some difficulty in walking, bending, and twisting, as well as a slightly limping gait. (Tr. at 287.) However, she did not use any assisted walking device, her lungs were clear to auscultation, and there was no sign of edema in any extremity. (*Id.*) She had normal peripheral pulses and deep tendon reflexes, normal hand strength, and no evidence

of muscular atrophy. (*Id.*) Her shoulders, elbows, wrists, hips, ankles, and knees had full range of motion. (*Id.*) Plaintiff's fine and gross manipulation skills were intact, and she had normal pinprick and vibration senses. (Tr. at 288.)

When Plaintiff saw Dr. Mince again in March 2015, her physical examination was essentially normal. (Tr. at 27, 309). Indeed, her lungs were clear to auscultation, she had a regular heart rate and rhythm, her extremities had no active synovitis, and she had no focal neurological deficits. (Tr. at 309). In May 2015 Plaintiff returned to her doctor with complaints including "some" hand swelling. (Tr. at 27, 305-06). However, Dr. Mince did not identify any significant edema during the visit. (Tr. at 27, 306). Plaintiff's lungs were clear to auscultation, and she had a normal heart rate and rhythm. (Tr. at 306).

Plaintiff did not seek medical treatment again until August 2015. (Tr. at 27). At that time, Plaintiff had swelling in her hands and feet, and Dr. Mince prescribed Lasix. (Tr. at 27, 303). Plaintiff's lungs were clear to auscultation, she had a regular heart rate and rhythm, and she had no focal neurological deficits. (Tr. at 303). Between September and November 2015, Plaintiff had essentially normal physical examination findings with no significant abnormalities. (Tr. at 27, 322-35).

Aside from the normal examination findings noted above, the ALJ also considered the effectiveness of Plaintiff's medications on her conditions. (Tr. at

25). *See* 20 C.F.R. § 416.929(c)(3)(iv). As the ALJ noted, Plaintiff testified that she had constant hand and feet swelling, but she also indicated her medication (Lasix) was effective at removing most of the swelling. (Tr. at 25, 44). A condition that can be controlled by medication is not disabling. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (explaining a condition that can "reasonably be remedied by surgery, treatment, or medication is not disabling").

Additionally, it bears noting that no treating or examining source ever gave an opinion that Plaintiff had limitations greater than what the ALJ found in his RFC assessment. *See, e.g., Powell v. Comm'r*, 571 F. App'x 914, 917 (11th Cir. 2014) (indicating that in evaluating a claimant's subjective complaints, the ALJ properly noted that the claimant "did not present any opinions from a treating or examining physician indicating that she was disabled or had limitations greater than those reflected in the RFC").

Although she does challenge the ALJ's credibility determination, Plaintiff does attempt to point to her own testimony as an argument for the combination of her impairments rendering her unable to work. Plaintiff's subjective complaints include shortness of breath, pain, and feet and hand swelling. (Tr. at 44.)

When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and

either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); *Wilson v. Barnhart*, 284 F.3d 1219, at 1225–26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929(c), (d); *Wilson*, 284 F.3d at 1225-26. This entails the ALJ determining a claimant's credibility with regard to the allegations of pain and other symptoms. *See id.* The ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005). When the reasoning for discrediting is explicit and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In this case, the ALJ noted that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. at 26.) However, he found that Plaintiff's statements concerning the intensity,

13

persistence and limiting effects of these alleged symptoms were only partially credible. (*Id.*) Substantial evidence supports this conclusion.

As noted by the ALJ, despite her morbid obesity, there was no evidence that Plaintiff had problems ambulating. Rather, Plaintiff was noted to be ambulatory on multiple occasions. (Tr. at 273, 274, 299). Dr. Ismail noted that Plaintiff was able to walk without an assistive device despite an ataxic gait. (Tr. at 288). Records from Dr. Mince consistently documented normal physical findings. (Tr. at 273, 296-99, 303, 306, 309, 318-21, 322-35). Dr. Ismail's consultative examination produced similar normal results. (Tr. at 287-88). The ALJ properly noted that despite Plaintiff's testimony that she experienced "8-9/10" pain on a daily basis, the evidentiary record as a whole "simply fails to support those allegations." (Tr. at 30). In sum, substantial evidence in the record fully supports the ALJ's RFC determination that Plaintiff could perform sedentary work with additional limitations.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Blevins's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on September 17, 2018.

/s/ L. Scott Coogler
L. Scott Coogler
United States District Judge

160704